Good afternoon. May it please the court, my name is Carmen Gonjassani, and I represent Warden Levern Cohen, who is the warden of the Ridgeland Correctional Institution in Richmond, Virginia, and I'm here to endorse the district's denial of qualified immunity to Warden Cohen. And I just wanted to start off by saying, making a point, certainly inmate on inmate violence is not condoned in any circumstances in prisons, but yet it is also the unfortunate fact that violence is inevitable in a prison setting. So the question before the court today is whether Warden Cohen is personally liable for the assault on Mr. Taylor by other inmates, based not on any specific notice by Warden Cohen, but rather based on the conditions of a very large prison, which holds a little over a thousand inmates. And if you look, it had an average between 2015 and 2017, there was about an average of 4% compared to the population of the prison, 4% inmate on inmate violence. And to find liability, Warden Cohen must have been deliberately indifferent to a substantial risk of harm, and have ignored that. And negligence is not the standard for deliberate indifference. And as the Supreme Court in the Farmer case recognized, there can't be liability just because of the presence of what even might seem to be objectively inhumane conditions. There has to be more. Warden Cohen, he has to have actual knowledge of a substantial risk to Mr. Taylor and have ignored that risk. He has to draw an inference. But isn't that what the magistrate said was a question of fact for the jury to decide because she could not, based on the evidence that was before, she could not reach that decision? She may have found a question of fact, but what we're arguing today, I'm not trying to dispute the underlying facts that she found concerning how much violence was in the prison. What I'm arguing today is that based on those facts, does that rise to the level of a constitutional violation? And I thought that's what she said was an issue because based on the evidence before her, she could not reach that decision. She may have said that. And wouldn't that mean that this court does not have jurisdiction? Well, first I will say I believe this court does have jurisdiction over the qualified immunity issue because we, I am not disputing those underlying facts. What's at issue is what is the, perhaps there's a disputed legal inference from those facts. And can those facts, can that reach a jury? Can that support a deliberate indifference claim under case law from the Supreme Court? And I've also cited, I know some case law from the 11th Circuit jury based on even the facts that she has cited. So the, I guess the question is how much violence is too much violence? But isn't that a factual question? Unless we've decided a case that says, on facts similar to this, this is not sufficient to hold a warden liable. Well, and that is what, like I said, the 11th Circuit cases that I've cited, I believe it was Harrison and Marbury, they, those, that circuit did find that the violence in those prisons did not rise to that level of a norm or constant, constant threat of violence. And that's the kind. Right. But those cases, I mean, the problem with these cases are they're all kind of specific to their facts, right? So your colleague on the other side would suggest that the evidence of the violence there was substantially lower than the record evidence in this case. And so, I mean, do you disagree with that? I disagree. I think this, this case could be compared, comparable to the Harrison case out of the 11th Circuit. That was a slightly smaller prison. And the court said that 33 incidents of inmate on inmate violence a year there, which I calculate is about 3%, that doesn't rise to the level of terminology has been used of, you know, the reign and a reign of violence and terror. And also just the constant, constant threat of violence. And so here in this prison, there is 123. And you, so you're comparing it to Harrison. And I think it was 33 cases over the same period of time. And here is 123. Well, that might have been, you may be referring to, I believe there was, I'm not sure if you're referring, oh, I see. There was a note in the Roth report where he found 103 weapon incidents, but he did not describe exactly, that report doesn't describe what that means, whether it's an attack or it was just some sort of confiscation. The, the actual number... Just for correction, it was 123 in the Roth report. He said the number of weapons confiscated in 2015 was 407. 2016 was 414. Right, that's correct. But then the Roth report also actually goes into the actual inmate on inmate assaults. And that was 2015, 26. 2016, 56. And Mr. Taylor's attack actually happened at the end of 2016. And so that's about a two year average of 41 inmate on inmate assaults, which is what the, the Harrison report was looking at. And they had the average of 33 in a slightly smaller prison. Like I said, Mr. Roth did, he did note the weapon incidences, but it just wasn't described what that meant in the report. So I think it's more accurate to look at what was the rate of actual assaults occurring. But wouldn't this be, as the magistrate court stated, for the jury to decide if he was deliberately indifferent in the rate and not this court? And is that what, I mean, I have concerns regarding jurisdiction. If this court, if there's a, there's no finality from the district court or from the magistrate court. And she said, because she based on the insufficiency of evidence before her, she could not come to that conclusion. And so those are, that's an issue, a fact for the jury. And I'm just curious as to how and why it's here. Well, I think I would have to just respectfully disagree because I still think that when we look at the law and what deliberate indifference means and how it has to be something more than, it can't just be the conditions of the prison itself. And it has to be something more because as we know, prisons, they're, it's a very, they're very difficult to manage. Contraband, assaults, that's always going to occur. And so we, that's why we have to look at standards, the other circuits, and even as the Supreme Court has noted, you know, it's not just the presence of these conditions, it has to be, be something more. And I'll admit, perhaps this is, perhaps they have, the plaintiff has a great case, maybe they have a great case for negligence against. Counselor, I can agree with your general point that the disputes over shelter and health and food and general conditions within the prison wouldn't give rise necessarily to a disputed issue of fact under a deliberate indifference standard that would justify dismissal of an interlocutory appeal. But here, as I understand it, the thing that came to the warden's notice were specific conditions that would lead to violence against inmates. There was one inmate that testified, he talked to Nurse Olson and the warden about inmate violence, and then there were all kinds of conditions that related directly to violence. People leaving cells unlocked and unsupervised wings and past incidents of violence against inmates. And so, even if your general point is correct, and I think it is, the general complaints about conditions don't suffice for a failure to protect. Whereas here, so much of the record seems to speak to violence and to put the warden on notice that, hey, I've got a problem here. And, you know, I mean, nobody wants to see what happened here. I mean, this gentleman was put in the hospital for a good number of days and he suffered a serious injury. It could have been far worse. And, you know, the prisons have simply got to protect the most vulnerable inmates from this sort of behavior. You can't go into prison doesn't mean that you are subject to no end of attacks and bullying and knife stabs and all the rest. You need a case like this to wake people up. I see my time is almost out. I don't know if you want me to go ahead and respond. I mean, I certainly agree with you. It should be the goal of any prison not to have this violence. Like I said, that is not the reality of prisons. And I know there was some evidence about the guards leaving the wings. But the question again, did those guards, I don't think there's any evidence that those guards themselves were being deliberately indifferent to the safety. That might be a negligence issue. But what we're asking, what we're talking about today is have we risen from negligence to the higher standard of deliberate indifference, which the Supreme Court requires. Again, the plaintiff may have a great case of negligence against SEDC for guards violating policies. But is that enough to put Warden Cohen on notice, on specific notice that something might happen to Mr. Taylor? One of the issues in this case that the record seems to suggest is the question of understaffing the size of the prison and the way that the wings are configured cause situations where sometimes a guard would leave a particular wing because he was involved with some other inmates and leave the wing without supervision and predictably something would happen. And the evidence is, according to your colleague on the other side, is that your client, the warden, was aware of it. And he did issue some post orders that made it clear that not supposed to leave the wings unattended. And so that's to his credit. But then there's evidence indicating that he refused or failed to staff vacant positions even though he had the money to do it. So that at least seems to suggest some indication of indifference to a perceived problem. So how do you respond to that? Well, I would note with the understaffing, you know, the Tom Ross report, it did come out. And he did not start investigating until after all these incidents happened. He was asked by SCDC not to look at these reports from a security standpoint. But just one quick question. But he used the data that was available to the ward. I mean, even though the report, I understand your position, the report didn't come out until I think was 17 or 18. But the data that he used, it came from the warden. And so the warden had to know about. That's correct. And he did note now, Mr. Roth did note that it was actually January 2018 that there hadn't been at that point in time, the funding, the positions that were funded for had not been staffed, which again, that was after the attacks. I will note that at the beginning of Mr. Roth's report, he actually notes that he actually just notes, even though you have funded staffing, it's difficult to find qualified staff. He noted then, during that time period, there was very low unemployment rate. This is on around page 839 of the Joint Appendix. And he also noted that while you had staffing levels, he said, you know, it wasn't because you didn't have a leadership team that wasn't committed. It's just even though you have funding trying to hire good staff, that's not always easy. And that's why administration of a prison, it's very difficult. And so does that mean that you are just constitutionally, deliberately indifferent because you have trouble hiring those staff? You know, Warden Cohen, I mean, he's trying the best he can. He has orders that the guards are not supposed to be leaving. He is working with a difficult situation. And that's why, should he be personally liable for trying to manage a very difficult and, yes, violent prison. All right. Thank you, Counsel. We've got some time left for rebuttal. We'll hear from Ms. Solipizio. Did I get that right? Yes, Your Honor. Go ahead. May it please the Court, Gabrielle Solipizio for the appellee. While I appreciate my colleague's arguments on the other side, I think we need to take a step back and really look at the threshold question of jurisdiction. And it's one that Judge Benjamin actually had brought up. The general rule is a defendant's entitled to invoke qualified immunity defense, but may not appeal the district court summary judgment order insofar as that order sets genuine issues of material fact. And that's Johnson v. Jones. While the Supreme Court has recognized that if there is a collateral order appeal, that may be appealable as a final judgment order. However, it has to be on a surely legal question. And here we have a summary judgment order that is on issues of evidentiary sufficiency. Let me ask you about that. So are you saying that as a matter of law, we or any appellate court could never dispute a finding by a district court that a warden was deliberately indifferent no matter how weak the set of facts supporting that finding? No, Your Honor. I don't necessarily disagree with that statement. I think that it turns first on a jurisdictional question. But if the facts are so closely intertwined with the underlying merits of the plaintiff's claim, and it doesn't raise a purely legal question, then the appellate court cannot decide and have jurisdiction to review those issues. Your answer to my question is no, an appellate court could never decide. I mean, let's say that, I don't know, there was one stabbing in the jail last year, and they confiscated two weapons, and the district court says that's just too much violence. If you look objectively at that set of facts, it just isn't. And because it comes up to us on an interlocutory appeal, we can't rule on that? Well, the appellate court cannot rule if the summary judgment order specifically turns on genuine issues of material facts. That's not really a genuine issue. Yes, Your Honor, that may not be a genuine issue of fact. If the order is decided on a genuine issue of material fact, then no, the appellate court would not have jurisdiction to review that case. No, I don't disagree with that. I'm just trying to figure out, because the other side of that is a defendant in Warden Cohen's situation is entitled to a finding of qualified immunity at the earliest possible opportunity. And if we let the case proceed to trial on a flimsy set of facts, that's problematic too. So the question is, how much violence is too much? I guess the violence is too much though, Your Honor. The question may be a distinction between the general notice condition argument that my colleague has brought up versus are there specific facts in the case that are involved in the decision of the district court's order. So my colleague tries to, I think, frame a legal argument based upon her general conditions argument. And what's important to remember though is if this was a general notice conditions case, then that could be a pure legal issue. But you'd have to accept the version of the facts as to Warden Cohen. And what's important to remember is that the magistrate judge in her report and recommendation and in the district court's order, which accepted that R&R, specifically states that they never imposed a general notice standard or strict liability standard. The magistrate judge specifically went through all of the facts and arguments that were laid out by Warden Cohen in his objection and to each one of those issues ruled that there was a general notice standard or strict liability standard. Defendant Cohen objects and says that there was no evidence that Warden Cohen had access to tools for reducing any potential danger to the plaintiff, that the plaintiff had not even established that Warden Cohen was aware of substantial risk. The district court and the magistrate judge found that there are genuine disputes of fact to that issue. The second example, whether Warden Cohen subjectively knew of a particular risk to the appellee and disregarded that risk. Warden Cohen says there's no inference that could be drawn. The magistrate judge's R&R and the adoption of the district court says there are genuine issues of fact that regard on that issue. As a third example, your honors, Warden Cohen's contention that the magistrate judge improperly gave weight to the Roth report. Well, the district court explained that the magistrate judge used the Roth report only as support in denying defendant's motion because it creates a genuine issue of material fact. So, as to all the pieces of evidence, they are and the magistrate judge's R&R and the adoption by the district court of that order specifically hinges on the fact that there are genuine issues of material fact and this court would not have jurisdiction. So, qualified immunity is a two-pronged analysis. One is, you know, there's an actual constitutional violation and the second is that violation clearly established in the case law. You don't discuss that in your brief and I imagine it's because you don't think that was by your colleague on the other side. Your honor, the first prong which you mentioned was whether the constitutional right would have been violated. The court didn't fact upon that there were genuine issues of material fact to that, so the court could not go to the second prong of qualified analysis test. I also do believe and agree with the preservation. Well, I could have accepted the facts on the, as your client asserted, I'm in the light most favorable to your client and concluded that nonetheless a warden Cohen couldn't have been on notice based on existing case law that he was violating your client's clearly established rights, but so that wasn't discussed below and apparently is not discussed here, so we don't get there is what I'm suggesting. Do you disagree? I agree with you. We do not get there, your honor, and we don't get there because I think of what your original question is, is there is also a preservation issue. So the general rule of this court is that a party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings and basically it's waived. That's seen in Wright v. Collins, U.S. v. Schroen, and in Wells v. Shriners Hospital. That general rule has since been extended in U.S. v. Midget and in that court the conclusion was that a general waiver rule is equally applicable to the waiver of specific issues and that court held that a party also waives the right to appellate review of a particular issue by failing to appeal to a district court that is specifically directed to those issues. And that is in line with the intent of the statute, 28 U.S.C. 636 B.1, which says that you have to focus on specific issues while making your objections to the R&R, not the report as a whole. And it also goes to the intent of the rule, Federal Civil Procedure 72B, which also requires the party to file specific written objections to proposed findings and recommendations. That same rationale would apply here in this case. The magistrate, again, specifically recommended that Cohen is not entitled to qualified immunity because questions of fact exist with regard to whether Cohen violated clearly established rights as discussed above and therefore the undersigned cannot determine at this time whether Cohen's actions were objectionably reasonable and summary judgment on qualified immunity grounds is improper. The R&R concluded with the standard notice of right that says you have to timely file your specific written objections. Failure to do so will result in a waiver. Warden Cohen did not object to that recommendation. The words qualified immunity don't even come up in his objections at all. But he did at least object and say that there was no violation period. So even though he might not have used the magic words qualified immunity, that's the first prong of the test. So why isn't that enough to preserve at least that specific issue? It's not enough to preserve, Your Honor. So what Warden Cohen objected to was the recommendation of denying defendant's motion for summary judgment as to plaintiff's claims for violation of Eighth Amendment rights state law claims for negligence, gross negligence, and claims for injunctive relief in one paragraph. While it could be argued that that broad objection could include an objection to qualified immunity, Warden Cohen failed to even make that argument in his brief. So the district court when reviewing that R&R went through the four sub-objections that were the reliance of inapplicable authorities, the Roth report being misconstrued, prior inmate assaults, and the expert witness undue weight and went through those four sub-parts as they were taken. You know, this court has also said that absent that specific objection, the court's not required to give an explanation for adopting the recommendation. So it would not the job of the court to make arguments on a party's behalf if the objections are presented in a very skeletal way. Can I ask you a question about the supervisory liability claim? Don't you first have to show that there was an underlying violation by one of Cohen's subordinates before you get to his supervisory liability? And there really isn't any allegation in this case about that, is there? Can you rephrase your question for me? I'm sorry. In order to make out a claim of supervisory liability, you first have to show an underlying violation or violations by Warden Cohen's subordinates. So what's the underlying constitutional violation that then attaches to Cohen because he's a supervisor? I think there's two answers to your question, Your Honor. So the And then, yes, Your Honor. And then there's also the correctional officers who were involved in this case which deliberately left the wing while the assaults were happening. There is evidence in the record that would indicate that there is a question of fact as to that very instance. So But you haven't sued any of those officers? That's right, Your Honor. We have not sued those officers, but Warden Cohen would be responsible for any deliberate indifferent acts that they may have made. Does the complaint allege that they were deliberately indifferent? That the subordinate officers were deliberately indifferent? Your Honor, it does not allege that they were deliberately indifferent. Okay. Do you have anything else? No, Your Honor. I would just say that this court has generally dismissed these types of appeals on lack of jurisdiction and for lack of preservation issues, and we ask that the court keep that in mind. In conclusion, the Warden Cohen has waived his qualified immunity defense by failing to object to that portion of the R&R, and there is no exception that would apply in this instance. Thank you. Thank you very much. Ghanjansani, you have some rebuttal time. Go ahead. I will just hit on the preservation issue first. Really, because what we have argued below is that Warden Cohen, there was not a constitutional violation, and so when the I will agree that word qualified immunity was not used, but it was the same analysis that would be used in a qualified immunity. It was looking at that first prompt. But doesn't a rule say you have to be specific in the R&R? And the cases all say you have to be specific as to, and I looked through the 11 pages of the objections, and there is nothing in the you object to maybe the analysis that she is using, but there is nothing in there where there is an objection to any legal, I guess, conclusion regarding qualified immunity. And so how is the district court supposed to be on notice that you all are objecting if there is no objection? Well, I will say the U.S. versus Midget case, it also talks about the objection. It has to give enough to alert the district court, but I think here where our objection was arguing about the analysis and about whether the general notice could constitute enough for a deliberate indifference, when it is arguing about whether Warden Cohen had committed a constitutional violation. One more question about that. You just said it yourself, it has to alert the district court. The district court did not discuss it because there was no objection. So how are we to reverse the district court on an issue that he or she did not even have notice of? Well, in the district court's order, he still recognizes that the magistrate had recommended the denial of qualified immunity, but I would argue that it really becomes one and the same whether there is the constitutional violation versus the qualified immunity. Those arguments are part and parcel of each other. As long as we have objected to that analysis, that really carries over. It is the same analysis as to whether there is a constitutional violation for qualified immunity. I think certainly even if this court finds that for some reason that did not alert, this is not a case where we have all briefed the issues. It is clear what we are discussing, whether there is that constitutional violation that is one of the factors of qualified immunity. I think this court could go ahead and reach that issue. As Judge Diaz has recognized, this is an entitlement for Wharton Cohen not to have to stand trial personally. I think it would be important for this court to go ahead and reach that issue when the record is fully developed on it, when it has been briefed. I think this would be an on a deliberate indifference claim under 1983. Again, my colleague, we have gone back and forth. She argues this is based on more than just general notice, but typically these failure to protect claims, there is something more. They either have been on notice from an inmate, that that inmate needs protection. They might know something about another inmate that is very dangerous that they are placing with someone. There is always, and that is what I mean. But isn't there, I have to find the case, but isn't there a case that says that the knowledge does not have to, I believe it is the Supreme Court, have to be to that specific inmate? That is correct. That is why I was saying sometimes it might be an inmate who is dangerous that you might not know who he might attack. There are cases where you may not have to know exactly who is going to be attacked or do the attacking, but there is something more than just being in a prison. That is what this case is starting to boil down to. It is the environment of a prison that they want to rely upon and the fact that, yes, there is unfortunately violence in a prison, which we all hope would not happen, but there is not something more than that that is alerting the warden that this particular inmate is subject to a substantial risk of harm. As the Supreme Court informer has recognized, you cannot just have liability based on just the condition of the prison alone. That is why there has to be something more. Let me ask you what is more because, and I think Judge Wilkinson stated it earlier, this inmate, I believe, had to be transported to the hospital where he was in the hospital for, I believe, eight or nine days and then came back because the injuries were so severe and came back and was in the infirmary for another eight days or seven or eight days. If you look at the, I believe it is the magistrate's order, she says in April of 2016, the same year, there was a major injury involving a shank where someone had to be hospitalized. And then in November of 2016, there was another incident involving, she, it's a major injury and had to be transported to the hospital. This one in December, another incident in December where an inmate was brutally attacked. So what's more? Well, I mean, I understand a black eye, a face. I mean, I would agree with you on that, but what's more? I mean, I recognize that, yes, there were some serious injuries, but I think it goes back to case law that does talk about where the violence is so constant that it's the norm. And I know there were several attacks, but it wasn't, you know, it wasn't all in the span of, let's say all these four attacks occurred in one week, in that much closer together, because it was spread out more, which is, I agree. I mean, that's not, I don't agree that this should happen in prisons, but are we looking at negligence or deliberate indifference? And you are going, I mean, there are unfortunately going to be inmate, on inmate violence in prison. So, but I think when you are looking at kind of that standard of the constant rain and terror, you're thinking more, I mean, if this was going on every single week, every single day, that would rise to a different level against Ward and Cohen. And I know there were, I believe, before Mr. Taylor's attacks, yes, there were four attacks before his, but it was over a span of time. And then that kind of goes back to, well, the Harrison case at the 11th circuit, you know, recognize, I mean, they had serious attacks too, 33 in one year. I think it was three years. I believe that Harrison. I thought Harrison was, I think it was three years, because the same time span, and that's where we came, I came up with the 123 attacks in three years. Okay. Maybe I, well, I thought Harrison was the three years. I know I did cite another case, Williams, where, now I, they had looked at over a span of three years. Each year there was about 90 stabbings, eight deaths, and numerous rapes a year. But I think they had, I had taken that down for an average of one year, but that case did span three years. But I believe Harrison was the 33 incidents in one year. And that, they found that did not rise to that constant level of violence and terror. And I believe, I'm sorry, I believe my time was up. It is up. You were responding to a question, so that was appropriate. But I think I'm going to stop you there. Okay. Thank you. And I would just ask the court to reverse. Thank you very much. Thank both counsel for their arguments here this afternoon. Judge Benjamin and I will come down and greet you. You know why Judge Wilkinson can't come down as much as he would want to. So after that, we'll stand in recess until tomorrow morning. This honorable court stands adjourned until tomorrow morning.
judges: Albert Diaz, J. Harvie Wilkinson III, DeAndrea Gist Benjamin